McKinney, J.,
delivered the opinion of the Court.
This was an action in the case brought by Colyar against Taylor, to subject the latter to the loss of fifteen hundred dollars, money of the plaintiffs, which came, at his request, into the possession of the defendant, in pursuance of his previous gratuitous undertaking to the plaintiff, to receive the money at Nashville, for the plaintiff, and deliver it' to him at Winchester — at which place both parties. resided.
Judgment was for the defendant; to reverse which, an appeal in error was prosecuted to this Court.
*374 The error assigned, is upon the instructions of the Court to the jury.
The statement of a mere outline of the case, without going into the particulars of the proof, will be sufficient for the understanding of the question submitted for our determination.
The defendant, after receiving the money, (which was in bank notes,) took it with him, in his pocket, to the public “ Fair-ground,” in the vicinity of Nashville, where were assembled a large crowd of persons. In the evening, the defendant applied to J. H. Estill, of Winchester, who intended returning home that night, to take charge of the money for the plaintiff; stating, that he, defendant, would not return for a day or two. Estill consented to do so, and thereupon the defendant took him aside, a few steps from the crowd of persons on the Fair-ground, and handed the money to him, Estill placed the money in his pocket book, which he deposited in the pocket of his pantaloons. Shortly after-wards, Estill got upon the train, not far distant from the Fair-ground. The cars were thronged with passengers, so much so, that Estill had to make his way through the crowd, from the second to the farther end' of the fourth car, before he found a seat. Soon after taking his seat, he discovered that his pocket had been picked. The train was stopped, and he got off; and after walking back about a mile, he found his pocket book lying in the track of the road, rifled of its contents.
His Honor, among other things, instructed the jury, in substance, that if the defendant received the money, to be carried gratuitously to the plaintiff, and, without *375 any authority from the plaintiff to intrust the money to Estill, the defendant delivered it to him to be carried to the plaintiff, and it was afterwards lost by the negligence of Estill, that, of itself, in the absence of negligence on the part of defendant, would not make him responsible for the loss; * * * that the defendant would not be responsible for the loss, unless he was guilty of gross negligence; * * * that if Estill “was a suitable person to confide such a trust in,” the defendant could not be responsible to plaintiff for the loss of the money.
It is insisted for the plaintiff in error, that this instruction is erroneous; and such is our opinion. We are aware of no sound principle or authority, by which a bailee of any sort, may, as a general rule, take it upon himself to part with the possession of the property bailed to him, without authority to do so from the bailor. A bailment creates a trust. And though it is true, that the responsibility of a mandatory, or bailee without compensation, is, in most respects, of a lower degree than that of other bailees, still, his engagement places him in the relation of a trustee, so far as to exact of him, fidelity in the execution of the trust assumed upon himself; and also to bring him within the scope of the general principle, applicable to all trustees, that the office or duties of his .trust cannot be delegated by him to another, without authority. The performance of the trust is a matter of personal confidence, which it is a breach of trust in the trustee to make over to a stranger ; and the original trustee will continue responsible for all the acts of the person so substituted: Hill on Trustees, (ed. of 1854,) 248, 791.
Upon this principle, it seems to us, that the unauthor- *376 zed delivery of the thing bailed, by the mandatory, to a stranger, would make him responsible for the loss, on the ground of the violation of his trust.
But, again: Such a delivery of the property to- a third person, is treated as a conversion. In some cases the bailor has an election, to sue on the bailee's implied contract, or to waive the contract and resort*to case, or. trover, according to the nature of the injury: Edwards on Bailments, 116. Trover will not lie on the ground of negligence on the part of the bailee. This action .proceeds upon the ground of his wrongful assumption of the right of property, by delivering it to a third person, without authority. This amounts to a conversion : 24 Mend., 169; 9 Johns. Rep., 361; Edwards on Bailment, 114. Accordingly, in Syed vs. Hay, 4 Term Rep., 260, it is held that if a mandatory, intrusted witli the goods of another, puts them into the hands of a third person, contrary to orders, it is a conversion. And it is plain, that a delivery of the goods to a third person, without any authority to do so, is the same, in principle, as a delivery contrary to orders.
So, it is held, that even where the bailor has re-possessed himself of the thing bailed, the action may be maintained for the breach of trust, which is a conversion: 2 Esp. N. P., 190, 191; 1 Cowan's Rep., 240; Edwards on Bailment, 129. And in Stuart vs. Frazier, 5 Ala. Rep., 114, it was held, that, on a deposit or bailment of money, to be kept without recompense, if the bailee, without authority, attempt to transmit the money to the bailor, at a distant point, by mail, or private conveyance, and the money is lost, he is responsible. Though, in general, this would not be the case in re *377 spect to money received for the use of another, and transmitted to him by the usual conveyance: Edwards on Bailment, 73.
These cases, and others of similar import to be found in the books, whatever may be the form of action, all proceed upon the doctrine that the engagement of the mandatory is of the nature of a trust, in the execution of which strict fidelity is required of him: Ibid, 105. Hence, as we have seen, if he parts with the possession of the thing bailed, to a stranger, without authority, it is a violation of his trust, for which he will be liable. So, if a specific direction accompanies the bailment, it must bo complied with strictly, and any substantial deviation therefrom, will, in general, render the bailee liable.
In Story on Bailments, sec. 188, it is laid down, as the rule, that a mandatory, or bailee without compensation, is responsible, only, for gross negligence, “applies solely to cases, where the mandatory is in the actual performance of "some act or duty entrusted to Mm, in 'regard to the property. For, if he violates his trust by a misuser of the property, or does any other act inconsistent with his contract, or in fraud of it, he will be clearly liable for all losses and injuries resulting therefrom.”
Now, it is obvious, that the delivery of the thing bailed — especially a large sum of money — by the bailee, to a third person, without authority, is not an “act or duty entrusted to him in regard to it; ” but a manifest violation of the trust, wholly inconsistent with his implied undertaking to the bailor, and in fraud of it.
And the author adds, in the same section, that “in cases of misuser, especially such misuser as amounts to *378 evidence of a conversion, it is, perhaps, strictly true, that any subsequent loss and injury, whether it be by accident or otherwise, will be at the risk of the mandatory.”
Upon the foregoing authorities, it follows, that the defendant is liable on the ground of a conversion of the money.
In the next place, wo are at a loss to see how the defendant can escape liability on the ground of gross negligence.
The phrase “gross negligence,” used in the books to define the degree of negligence for which a mandatory is responsible, is so vague in itself, so inapt to convey any precise idea, and so difficult' of application to the circumstances of particular cases, that some confusion has been produced in the cases upon this subject, from its use; and the same remark is true, as respects the phrase, “slight diligence.”
Diligence is a relative term: and what would amount to the requisite diligence at one time, in one situation, and under one set of circumstances, might not amount to it in another: 2 Kent’s Com., 561.
The degree of care required of a mandatory, is essentially dependant upon the circumstances of the case. The general principle governing his liability, is, indeed, the same in all cases, but its application is materially effected, and varied by the circumstances of each particular case. The bailor’s trusting the bailee with the goods, is a sufficient consideration to oblige him to a careful management: Edwards on Bailments, 94; and imposes upon him a duty to exert himself in the proportion to the exigence of the case: Ibid., 106. In Nelson vs. Macintosh, 1 Starkie’s N. P., 188. Ld. El *379 lenborough held, that though a person does not carry for hire, yet he is bound to take proper and prudent care of that which is committed to him..
The duty of a person employed without remuneration, is to act faithfully and honestly, and not to be guilty of any gross, or corrupt neglect in the discharge of that which he undertakes to do: Darnal vs. Howard, 4 Bound Cres., 345.
It is not always enough that the mandatory takes the same care of the goods entrusted to him, that he does of his own, if that fall short of what is required. In Tracy vs. Wood, 3 Mason's Rep., the mandatory was held liable where. he had taken the same care of the bailor’s money, as of his own ; or more properly, where he had been guilty of equal negligence with regard to both.
The correctness of the general principle, that a mere mandatory is liable only for “gross negligence,” is not to be questioned, when properly understood. Hence, if the goods be wrested from him by robbery, or taken by theft, or destroyed by fire or violence, without gross neglect on his part, he will not be liable.
But, it must be kept in view, that this general principle, that a mandatory is only liable for gross neglect, implies strict fidelity on his part, and the exercise of such care and prudence, as, with reference to the particular subject of the bailment, and the circumstances of the particular case, may be requisite for the performance of his undertaking.
Mr. Story says (Sec. 186,) that the degree of care which a mandatory may be required to exert, must be materially effected by the nature and value of the goods, *380 and their liability to loss or injury. That care and diligence, which would be sufficient as to goods of small value, or of slight temptation, might be wholly unfit for goods of great value, and very liable to loss- and injury.
In the former case, the same acts might be d.eemed slight neglect only, which, in respect to the latter, might justly be deemed gross neglect. Perhaps, he adds, the best general test is, to consider, whether the mandatory has omitted that cafe, which bailees, without hire, or other mandatories of common prudence, are accustomed to take, of property of the like description. Story on Bailment, sec. 186. And in section 15, the author says: the bailee ought to proportion his care to the injury or loss which is likely to be sustained by any improvidence on his part.
Applying these principles to the facts of the present case, it seems to us, that the conduct of the defendant in withdrawing the money from the Bank, and taking it with him to a place, known to be generally frequented by swindlers and pickpockets, and there, in public, within a few steps of the promiscuous crowd, attempting to count the money before delivering it to Estill, evinced such a degree of heedless incaution, and disregard of common prudence, as may justly be considered as amounting to the grossest negligence.
The case under consideration, does not require that we should notice the question, whether a delivery of the property to a stranger, might not be excused or justified, upon the ground of an implied authority, to be gathered from all the circumstances of the case: or upon the ground of an apparent, or actual necessity for *381 so doing. We, therefore, intimate no opinion upon these questions.
The point, as to the delivery of the subject of the bailment, to a stranger, was involved in the case of Kirtland vs. Montgomery, 1 Swan, 452. But, the question was not examined in that case, nor was it expressly decided; though it is true, the casual observations and intimations thrown out in that case, tend to a different conclusion from that to which we have arrived in the present case. And by that case, his Honor was influenced in his charge, perhaps, contrary to his own view of the law.
It will be observed, that we have abstained from any notice of the facts of the case, prior to the defendant’s actual reception of the money at Nashville; inasmuch as the portion of the charge submitted for our consideration, and the discussion upon it, presented no question upon the other facts.
Judgment reversed.